# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

|   |   |
|---|---|
| CO2 DESIGN GROUP, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> HARRAH'S IMPERIAL PALACE ) <br> CORPORATION, ) <br> ) <br> Defendant. ) | Case No. 2:10-cv-00053-KJD-PAL <br> <br> **ORDER** <br> <br> (Mot. Compel - Dkt. #40) |

The court conducted a hearing on Defendant's Motion to Compel Production of Documents (Dkt. #40) on November 15, 2011. J. Scott Murphy appeared telephonically on behalf of the Plaintiff. James Whitmire and Jason Smith appeared on behalf of the Defendant. The court has considered the Motion, Plaintiff's Opposition (Dkt. #42), Defendant's Reply (Dkt. #46), and the arguments of counsel.

The complaint in this case was filed January 13, 2010, and involves an action for conversion and negligence. The First Amended Complaint (Dkt. #28) was filed March 10, 2011. Plaintiff alleges that Coco Benouaiche was and is an established high-end cashmere vendor and the principal shareholder and President of Plaintiff CO2 Design Group, Inc. ("CO2"). First Amended Complaint, ¶ 8. From August 27-29, 2007, CO2 was a vendor participating in the "Project Show" held at the Las Vegas Convention Center. *Id.* ¶ 9. CO2 and Coco Benouaiche were operating a booth at the Project Show for the sale of cashmere goods. *Id.* Plaintiff had participated in the Project Show for several preceding years and the show was its largest and most profitable trade show. *Id.* ¶ 10. Plaintiff reserved a room at the Imperial Palace for three nights from August 26-29, 2007, for the use of one of its employees who was working at the show. *Id.* ¶ 11. CO2's employee attended the Project Show and took numerous orders for merchandise from customers who visited its booth. *Id.* ¶ 13. All of the orders from the first two days of the Project Show were stored and kept in the employee's room at the Imperial Palace. *Id.* ¶ 14.

On the night of August 28, 2007, the employee left the room for the evening. *Id*. ¶ 15. Defendant Imperial Palace knew or should have known that the employee would not be checking out of the room until the scheduled departure date on August 29, 2007. The employee returned in the early morning hours of August 29, 2007; the card key that had been given to her would not operate the door; and had been deactivated. *Id*. ¶ 17. The Imperial Palace rented the room to another guest. *Id*. ¶ 18. The personal belongings of CO2's employee as well as the orders and other equipment of CO2 that were in the room were no longer there and have never been located or returned. *Id.* As a result of these actions, CO2 estimates it lost approximately $1.8 million dollars in sales, and suffered irreparable and crippling damages to its business reputation. *Id*. ¶ 32. CO2 estimates that it lost 50 to 70 sales orders from the 2007 Project Show. The prayer for relief requests general damages in the amount of $1.8 million dollars, special damages, punitive damages and attorneys fees and costs.

In the current motion, Defendant seeks to compel responses to requests for production of documents served May 10, 2011. Plaintiff served responses June 20, 2011, but produced no documents. Plaintiff responded to Request for Production No.s 1-7, and 18, but did not respond to Request No.s 8-17. Counsel for Defendant sent multiple follow-up correspondence and left messages to meet and confer in an effort to avoid this motion. The Plaintiff produced supplemental financial data for the period of 2005 through 2007, and indicated that the client was working on producing financial records for 2008; however, Defendant regards Plaintiff's responses as inadequate and seeks an order compelling further responses, and precluding the Plaintiff from using or relying on any documents supporting its damages which have not been produced in discovery.

Plaintiff opposes the motion representing that it served its responses to the requests for production it received. Plaintiff believed the requests for production were mis-numbered and only received Requests 1-7 and 18. Plaintiff disputes that it did not produce any documents supporting its damages and represents that it provided a full and complete Rule 26 disclosure of all documents in its possession, custody or control. Plaintiff has objected to production of all of the documents requested because the requests are over broad in seeking financial information over a ten-year period. However, Plaintiff agreed to produce financial records from 2005 through 2008. Plaintiff ceased operations in 2009, and states that because it is such a small corporation, its financial records were disorganized and

in disarray. As a result, Plaintiff retained the services of an accountant to organize, sort and analyze the financial records of Plaintiff for these years. Plaintiff produced the Quick Books reports prepared by the accountant who organized Plaintiff's financial data. Plaintiff claims that it was not until Defendant filed its motion to compel that Plaintiff was aware there were an additional ten categories of documents that it had not answered. It has now served a supplemental response and produced additional documents. Plaintiff is willing to produce whatever other information Defendant deems necessary or appropriate, and is more than happy to provide month-by-month data for the years involved.

At the hearing, counsel for Defendant indicated that this motion to compel was reluctantly filed because of difficulty obtaining critical information concerning the Plaintiff's damages. Defendant has held off taking the deposition of Plaintiff's principal and other witnesses until receiving the information needed to take meaningful depositions. Additionally, lack of financial information from the Plaintiff has delayed Defendant's efforts to inform its expert to prepare an expert report. Plaintiff has now produced financial accounting records for 2005 through 2008, and month-to-month records for 2007 and 2008. However, Plaintiff has not produced any of the tax records requested, and has limited production of financial data from 2005 forward. Counsel for Defendant agreed that if the company ceased operations in 2009, its request for financial data should be limited through 2009.

Counsel for Plaintiff indicated that his client is a small corporation consisting of two or three employees. The corporation is not sophisticated and has not had a sophisticated record-keeping or reporting system in place. The accountant was required to go through records to produce reports that did not previously exist. Plaintiff understands that the financial documents Defendant is requesting are needed to prove Plaintiff's case and has done its best to locate and produce them. Plaintiff is still attempting to locate the month-to-month reporting records for 2005 and 2006, but does not know what condition these records are in, or whether the records are "compromised". Plaintiff objects to producing tax returns on the grounds the returns are confidential, and Defendant's need for the tax returns does not outweigh its privacy concerns.

Having reviewed and considered the moving and responsive papers and the arguments of counsel, the court finds that Defendant's request for production are over broad in requesting "all documents" and in requesting all financial documents from 2001 to the present. Plaintiff complaint

alleges that the Las Vegas Project Show was its most profitable several years before 2007. The court will therefore require the Plaintiff to produce financial documents responsive to Defendant's requests for the three-year period preceding the August 2007 trade show involved in this dispute. Plaintiff shall produce financial records for the period between January 1, 2004, and December 31, 2009. Plaintiff shall produce or make available for inspection and copying financial data used to prepare the Quick Books reports prepared by its accountant for the period between 2004 and 2009, and the month-to-month data for the same period. Additionally, the court will require Plaintiff to produce Schedule C's from it's income tax returns for the years 2004 through 2009.

**IT IS ORDERED** that:

1. Defendant's Motion to Compel (Dkt. #40) is **GRANTED in part** and **DENIED in part** consistent with the provisions of this order.

2. Plaintiff shall have until December 15, 2011, to supplement it responses to the requests for production of documents outlined in this order.

3. Plaintiff shall be precluded from using any financial information supporting its damages that are not produced on or before December 15, 2011, on a motion, at a hearing, or at trial unless Plaintiff establishes that its failure to comply with this discovery obligation was substantially justified or harmless.

4. A protective order is entered precluding the Defendant from using Plaintiff's tax records for any purpose unrelated to this litigation.

Dated this 16th day of November, 2011.

_____
Peggy A. Leen
United States Magistrate Judge